# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**SEAN KENDRICK,**

                        Petitioner,

                                                      **Case No. 01-C-1261**

        **v.**

**JODINE DEPPISCH,**
Warden, Fox Lake Correctional Institution,

                        Respondent.

---

## DECISION AND ORDER

---

On December 17, 2001, the petitioner, Sean Kendrick ("Kendrick"), who is currently incarcerated at the Fox Lake Correctional Institution, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Kendrick challenges his September 16, 1998, conviction by the circuit court of Milwaukee County, Wisconsin, for possession with intent to deliver more than 100 grams of cocaine in violation of Wis. Stat. § 961.41(1m)(cm)(5). This Court issued orders on January 4, 2002, October 29, 2004 , and June 13, 2006, staying the proceedings before this Court until Kendrick informed the Court that he had exhausted his state remedies.

On November 19, 2007, this Court issued an order granting Kendrick's motion to reopen the action based on Kendrick's representations that he has nothing pending in the lower courts and directed Kendrick to provide the Court with a copy of his amended petition. On December 17, 2007, Kendrick filed an amended petition for writ of habeas corpus.

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court conducted a review of Kendrick's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Kendrick's amended petition lists seven grounds for relief: (1) ineffective assistance of trial counsel John Miller Carroll ("Carroll") and Christopher Bailey ("Bailey"); (2) denial of Kendrick's motion to withdraw his plea prior to sentencing; (3) ineffective assistance of trial counsel Robert N. Meyeroff ("Meyeroff") at the plea withdrawal hearing; (4) the trial court's erroneous denial of plea withdrawal and improper instruction to Carroll and Bailey not to produce Kendrick at the pretrial conference/plea hearing; (5) failure of appellate counsel Assistant State Public Defender Michael K. Gould ("Gould") to comply with *Anders v. California*, 386 U.S. 738 (1967); (6) the appeals court erred in violation of the United States Constitution and mandates; and (7) the Wisconsin Supreme Court erred by denying review of Kendrick's constitutional claims.

By an order of January 15, 2008, this Court granted Kendrick leave to proceed *in forma pauperis* on grounds one through five of his amended petition, directed the Respondent to answer on those grounds, and dismissed grounds six and seven.[1] The Respondent answered and argued that Kendrick's fully exhausted claims are without merit because Kendrick cannot prove that the Wisconsin courts resolved his claims in a manner

---

[1]The Court held that grounds six and seven of Kendrick's amended petition are subsumed by the standard for federal habeas corpus review of state court decisions and, therefore, do not constitute separate grounds for relief. The Court also held that ground seven is not an exhausted claim. January 15, 2008, Decision and Order at 4-5.

that is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Kendrick was charged in Milwaukee County on June 18, 1998, of possession of more than 100 grams of cocaine with intent to deliver. Following the waiver of a preliminary hearing, Kendrick appeared with counsel on September 16, 1998, and entered a plea of no contest to the cocaine charge.[2] The prosecutor agreed to recommend a sentence of fifteen to twenty years. Kendrick was subsequently sentenced by the circuit court on December 10, 1998, to twenty years in prison. (Respondent's Answer to Petition for Writ of Habeas Corpus ("Answer"), Ex. A.)

Kendrick, by counsel, filed a Notice of Intent to Pursue Postconviction Relief on December 16, 1998. Kendrick's appointed counsel, Gould, filed a Notice of Appeal on July 16, 1999, and in that notice, appointed counsel informed the court of appeals that he would be filing a no merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Wis. Stat. § 809.32(1). The no merit report and Kendrick's written response were received by the court of appeals which, after an independent review of the record, summarily affirmed the judgment of conviction on November 28, 2000. (Answer, Ex. B.) On February 7, 2001, the Wisconsin Supreme Court denied Kendrick's petition for review. (Answer, Ex. D.)

---

[2]A defendant charged with a criminal offense may plead "guilty," "not guilty," or "no contest, subject to the approval of the court." *See* Wis. Stat. § 971.06(1); *see also Cross v. State*, 45 Wis. 2d 593, 599, 173 N.W.2d 589, 593 (1970) (a no contest plea "when accepted by the court . . . constitutes an implied confession of guilt for the purposes of the case to support a judgment of conviction and in that respect is equivalent to a plea of guilty.").

On December 14, 2001, Kendrick filed, *pro se*, a motion for postconviction relief pursuant to Wis. Stat. § 974.06. Kendrick alleged that he received ineffective assistance of trial counsel; that the state failed to disclose the identity of its informant; that the circuit court failed to comply with Wis. Stat. § 971.08 in conducting the plea hearing; and that his sentence was unduly harsh. With regard to the ineffective assistance of counsel claim, Kendrick contended Carroll received a favorable plea offer from the state which Carroll failed to communicate with Kendrick. The motion stated that the state offered to recommend a three-year sentence in exchange for Kendrick's cooperation in a drug investigation. Kendrick also stated that he would have accepted this plea offer if he had known of its existence, pointing out that he accepted a less favorable plea bargain. On December 17, 2001, Circuit Court Judge Mary Kuhnmuench denied the motion ruling in part that Kendrick's claims of ineffective assistance of counsel were procedurally barred under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). (Answer, Ex. E.) Kendrick appealed. On September 30, 2002, the court of appeals accepted the state's concession to remand for an evidentiary hearing on Kendrick's claim that his trial counsel, Carroll, allegedly had failed to advise Kendrick of a favorable plea offer from the state. The court of appeals summarily rejected Kendrick's other claims of error. (Answer, Ex. I.)

On remand to the circuit court, Attorney Lynn Ellen Hackbarth represented Kendrick for a time, until she was allowed to withdraw. The State Public Defender declined to appoint substitute counsel. Circuit Court Judge Michael B. Brennan conducted the remand hearing in September and November of 2003 and June of 2004. At the conclusion of the hearing on

-4-

June 15, 2004, Judge Brennan rendered a oral decision rejecting Kendrick's claim of ineffective assistance of counsel and denied his motion for postconviction relief.[3] (Answer, Ex. J.)

Kendrick did not timely appeal from the denial of his Wis. Stat. § 974.06 motion on remand. Instead, on November 1, 2004, Kendrick filed a motion for reconsideration of Judge Brennan's oral ruling of June 15, 2004. On November 17, 2004, the court of appeals dismissed the motion, ruling that it belonged in the circuit court and noting that no appeal was pending before the appellate court. (Answer, Ex. K.)

On June 28, 2004, Kendrick filed a pro se petition for supervisory writ in the Wisconsin Court of Appeals alleging that he was wrongly absent from two pretrial hearings in his criminal case, that the proceedings should have been transcribed and that transcripts made available to him, and that his appellate/postconviction attorneys on his direct appeal and on remand from his § 974.06 appeal were ineffective in not seeking relief from his conviction on these alleged errors. The state filed a response to the petition. (Answer, Ex. L.) On December 7, 2004, the court of appeals treated Kendrick's petition as a petition for a state law writ of habeas corpus and denied the petition. (Answer, Ex. M.) On March 8, 2005, the supreme court denied Kendrick's petition for review. (Answer, Ex. N.)

On September 12, 2005, Kendrick filed a *pro se* motion in Milwaukee County Circuit Court seeking reconsideration of Judge Brennan's oral denial of Kendrick's § 974.06

_____

[3]This issue, regarding the alleged plea offer, is not raised in Kendrick's Amended Petition for Writ of Habeas Corpus.

postconviction motion challenging the effectiveness of his trial counsel. That same day, the circuit court summarily denied the motion. (Answer, Ex. O.) Kendrick attempted to appeal but his appeal was dismissed as untimely by the court of appeals on July 12, 2006. (Answer, Ex. P.) On November 6, 2006, the supreme court denied Kendrick's petition for review. (Answer, Ex. Q.)

## APPLICABLE LAW

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") greatly restricts federal habeas review of state court criminal convictions. The United States Supreme Court summarized the narrow scope of federal habeas corpus review of state court judgments as follows:

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra*, at 405, 120 S.Ct. 1495; *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam*). A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra*, at 405, 120 S.Ct. 1495; *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).

*Brown v. Payton*, 544 U.S. 133, 141 (2005).

Thus, "contrary to" and "unreasonable application" have independent meaning. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). The question is whether the state court's application of clearly established federal law is objectively unreasonable; an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

> An incorrect application of clearly established federal law is not necessarily an unreasonable one. *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001). As such, a federal court cannot substitute its independent judgment as to the correct outcome; rather, it must determine that a state court decision was both incorrect *and* unreasonable before it can issue a writ of habeas corpus. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

*Davis v. Litscher*, 290 F.3d 943, 946 (7th Cir. 2002).

A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (citation omitted). A court unreasonably applies federal law if it makes a determination "'lying well outside the boundaries of permissible differences of opinion.'" *Id.* (citation omitted). Finally, a state court's factual determinations are presumed correct and are not "'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Id.* (and cases cited therein); 28 U.S.C. § 2254(e)(1).

Further, the Court may not grant federal habeas relief unless it determines there was "clearly established Federal law" as determined by the Supreme Court at the time of the state court ruling in question. *Lockyer v. Andrade*, 538 U.S. 63, 71-2 (2003). A rule is "clearly established" when it is compelled by existing Supreme Court precedent. This Court may not rely on precedent of circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly

-7-

established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

## DISCUSSION

Kendrick raises several challenges to his conviction. Kendrick's second challenge, which this Court will address first, is that Kendrick should have been allowed to withdraw his plea prior to sentencing. Kendrick argues that his plea was hastily entered on the very date the trial was to begin. The next day Kendrick fired Carroll and brought a motion to withdraw his plea. Kendrick contends that Carroll "coerced" Kendrick by giving an "ultimatum of a 15-20 year sentence or a 30 year sentence after trial." (Petition for Writ of Habeas Corpus 28 U.S.C. § 2254 ("Petition") at 8.) Kendrick also claims that Carroll "confused" Kendrick by telling Kendrick to answer "yes" to the judge's questions at the plea hearing. (*Id.*) The Respondent contends that Kendrick's no contest plea was voluntary and properly entered and Kendrick was not entitled to withdraw his plea. The Repondent asserts that the Wisconsin Court of Appeal's rejection of this fully exhausted claim was not contrary to and did not involve an unreasonable application of controlling United States Supreme Court authority.

A defendant's plea of guilty or no contest is constitutionally valid if entered knowingly, voluntarily and intelligently. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The voluntariness of the plea is determined by "considering all of the relevant circumstances surrounding" the plea. *Brady v. United States*, 397 U.S. 742, 749 (1970). A plea is voluntary if not induced by threats or

-8-

misrepresentations and if the defendant is made aware of the direct consequences of the plea. *Id.* at 755. The defendant "need not be made aware of every possible consequence." *St. Pierre v. Walls*, 297 F.3d 617, 634 (7th Cir. 2002). Rather, he must be aware of the "relevant circumstances and likely consequence" surrounding the plea. *Brady*, 397 U.S. at 748. In pleading guilty, the defendant must be apprised of three fundamental rights: the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Boykin*, 395 U.S. at 242-43.

Under Wisconsin law, the circuit court should freely allow a defendant to withdraw his plea prior to sentencing for any "fair and just reason," unless the prosecution will be substantially prejudiced. *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111, 117 (1995). A circuit court's discretionary decision to grant or deny a motion to withdraw a plea before sentencing will be affirmed as long as the circuit court examined the relevant facts, applied a proper standard of law and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982). Similarly, the Federal Rules of Criminal Procedure allow a defendant to withdraw a guilty plea for "a fair and just reason." *United States v. Bennett*, 332 F.3d 1094, 1099 & n.1 (7th Cir. 2003). A guilty plea following a Federal Rule of Criminal Procedure 11 colloquy enjoys a "presumption of verity." *Id.* at 1099.

On September 16, 1998, Kendrick appeared before Circuit Court Judge Timothy G. Dugan for a plea hearing. (Transcript Submission ("Transcript"), Ex.6.) The circuit court judge specifically determined that Kendrick understood that the offense – possession with

-9-

intent to deliver cocaine – carried a presumptive minimum penalty of ten years and a maximum penalty of thirty years. (*Id.* at 4.) The circuit court explained that it was not bound by the recommendations of Kendrick's attorney or the District Attorney and was free to sentence Kendrick to whatever sentence the circuit court deemed appropriate. (*Id.*) The circuit court explained the charge to Kendrick and determined that he understood what the state would have to prove to convict him at a trial. (*Id.* at 5.) The circuit court also reviewed the Guilty Plea Questionnaire, Waiver of Rights form with Kendrick. Kendrick admitted to signing and reviewing this form with his counsel and that his answers on the form were truthful. (*Id.*) The circuit court determined that Kendrick understood that by entering a plea, Kendrick was giving up the constitutional rights listed in the wavier of rights form and the circuit court reviewed each of those rights with Kendrick, including the right to remain silent and not incriminate oneself, the right to confront the state's witnesses, the right to a jury trial, and the right to a unanimous verdict. (*Id.* at 5-7.)

The circuit court asked Kendrick if he was entering his plea freely and Kendrick replied, "Yes." (*Id.* at 6.) The circuit court asked Kendrick if he was satisfied with his lawyer's representation and Kendrick replied, "Yes." (*Id.*) The circuit court asked Kendrick if he understood that by entering a plea of no contest, the circuit court would find him guilty. Kendrick replied, "Yes." (*Id.* at 7.) The circuit court asked Kendrick if he had gone over the criminal complaint and asked him if the circuit court could use the complaint as a factual basis for the plea. Kendrick replied, "Yes." (*Id.* at 9.) Based upon the plea of no contest, the

-10-

circuit court found Kendrick guilty of the offense of possession with intent to deliver cocaine, a controlled substance. (*Id.*)

Kendrick argued that he should have been allowed to withdraw his plea prior to sentencing because his trial attorney duped him into pleading guilty. The circuit court permitted Kendrick's trial counsel, Carroll, to withdraw and on October 14, 1998, Kendrick filed a motion to withdraw his plea. Kendrick was represented by Meyeroff. Kendrick alleged that Carroll tricked him into pleading guilty by having him sign the plea questionnaire and waiver of rights form without reading it. Kendrick asserted that Carroll told him that they were changing judges and to just answer "yes" to all the judge's questions and the result would be a change of judges and then a trial . Kendrick asserted that he never understood that he was pleading no contest. Kendrick also argued that he had a valid entrapment defense which he would have asserted at trial.

On November 24, 1998, Judge Dugan conducted a hearing on the motion to withdraw plea. (Transcript, Ex. 9.) Carroll testified that he informed Kendrick that he did not believe that an entrapment defense would be successful and that Kendrick decided to enter a plea. (*Id.* at 13.) Carroll testified that he went over the plea questionnaire with Kendrick and that Carroll believed Kendrick understood the questions. (*Id.* at 14.) Carroll said that he did not discuss substitution of judges with Kendrick at the time Kendrick signed the questionnaire. (*Id.* at 15.) Carroll denied that he deceived Kendrick in any way at the time that the plea was entered and stated that he believed the plea was knowingly, voluntarily and intelligently entered. (*Id.* at 20.)

Kendrick testified that Carroll tricked him into pleading no contest. He denied that Carroll had ever told him about Carroll's belief that the entrapment defense would not work. ( *Id.* at 26.) Kendrick testified that Carroll told him that the case would be dismissed. (*Id.* at 29.) Kendrick stated that he thought the guilty plea questionnaire was a paper for changing judges. (*Id.* at 33.) Kendrick also stated that Carroll told him not to pay attention to what the judge was saying and to just answer "yes" to the judge's questions. (*Id.* at 34.) Kendrick testified that during the plea colloquy, when Kendrick was asked a question, Carroll would lean over and tell Kendrick to answer, "yes." (*Id.* at 44.)

In making its ruling, the circuit court stated, "I have rarely had a defendant who's come in to court and sat on the stand under oath and engaged in such a bald face lying testimony as the defendant chose to do in this courtroom. I find his testimony to be wholly incredible, to be a purposeful, intentional lie." (*Id.* at 50.) The circuit court noted that during the plea colloquy, Carroll did not lean over after each and every question and advise Kendrick. (*Id.* at 51). The circuit court noted that Kendrick faced substantially more time than 20 years if he went to trial and that the amount of cocaine was substantial. (*Id.* at 51-2.) The circuit court found that Carroll's testimony was credible and concluded that Kendrick "voluntarily entered his plea with full understanding of the nature of the offense, the facts that supported it and the consequences; that based upon those findings, the defendant has not met his burden even by a preponderance of the evidence that there was a fair and just reason to allow him to withdraw his plea." (*Id.* at 53.)

On direct appeal, the Wisconsin Court of Appeals addressed Kendrick's claim as follows:

> After the evidentiary hearing on Kendrick's plea withdrawal motion, the trial court emphasized the contradictions between Kendrick's testimony, and the plea questionnaire and waiver of rights form and the transcript of the plea hearing, and explained why it found Kendrick's testimony "wholly incredible . . . a purposeful, intentional lie," unlike that of his formal trial counsel.

(Answer, Ex. B at 2-3.)  The court of appeals independently concluded that Kendrick's challenge to the circuit court's denial of Kendrick's motion for plea withdrawal lacked arguable merit.

A federal court may grant habeas relief if a state court applied a rule contradicting governing United States Supreme Court law or unreasonably applied a clearly established principle to the facts. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).  Kendrick has not pointed to a United States Supreme Court case that is contrary to the court of appeals' decision with regard to his claim that his plea was involuntarily or unknowingly entered and that he should have been permitted to withdraw his plea.  Moreover, the petitioner has not pointed to a United States Supreme Court case that demonstrates that the court of appeals utilized an unreasonable application of United States Supreme Court law.

In this case, the circuit court explicitly inquired into the voluntariness of Kendrick's plea, asking specifically whether Kendrick understood the charge he was facing.  Kendrick said that he understood.  The circuit court asked whether he had fully discussed his trial rights and possible sentencing range with his attorney.  Kendrick said that he had.  The circuit court further inquired of Kendrick's level of satisfaction with Carroll's representation,

-13-

and Kendrick replied that he was satisfied. Prior to accepting Kendrick's no contest plea, the circuit court conducted a careful colloquy with Kendrick to ensure that he was knowingly and voluntarily choosing to plead guilty. A review of the plea colloquy demonstrates that Kendrick was provided sufficient information about his constitutional rights to render the plea voluntary and that he express unqualified assent when asked if he understood his rights. The circuit court's inquiry was thorough, and Kendrick expressed no reservations or hesitations.

The circuit court conducted a hearing on Kendrick's motion to withdraw plea. At that hearing, the circuit court heard testimony from Kendrick, who was represented by counsel, as well as Kendrick's former trial counsel. The circuit court forcefully held that Kendrick's testimony was completely incredible and that Kendrick deliberately lied on the stand. A credibility determination is entitled to great deference and is presumed to be correct unless rebutted by clear and convincing evidence.[4] The circuit court judge did not erroneously exercise its discretion when it found no fair and just reason to allow Kendrick to withdraw his plea. Given the findings of the circuit court, the court of appeal's determination that Kendrick's request to withdraw his plea lacked merit was reasonable.

Habeas relief can only be granted to Kendrick if this Court determines that the decision of the Wisconsin Court of Appeals was contrary to clearly established Supreme

---

[4]"In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir. 1993) (extending "great deference" to a trial court's credibility determination because such deference is mandated by Congress under the AEDPA).

Court law or was unreasonable. Given the circuit court's finding that Kendrick deliberately lied on the stand, the Wisconsin Court of Appeals decision was reasonable and Kendrick has not rebutted this determination by clear and convincing evidence. This Court's review of the extensive plea colloquy leads to the conclusion that Kendrick's plea was entered into knowingly, voluntarily and intelligently as required by clearly established federal law. The circuit court did not abuse its discretion in denying Kendrick's motion to withdraw his plea. Kendrick's assertion that he should have been allowed to withdraw his plea prior to sentencing is rejected.

Kendrick claims that he received ineffective assistance of counsel.[5] Kendrick claims that Carroll and Bailey coerced Kendrick into an illegal plea deal, lied about an entrapment defense, failed to have Kendrick at a pretrial conference and an arraignment hearing was never held. Kendrick also claims that Carroll was ineffective for failing to file a suppression motion, a motion for outrageous government conduct and a motion to produce informant background. Kendrick claims that Meyeroff was ineffective for failing to develop the record during the motion to withdraw plea hearing, and in particular, failed to accurately argue Carroll's misunderstanding of the law governing the entrapment defense. In response to the no merit report, Kendrick argued that he had a valid entrapment defense which he should have been permitted to present. Kendrick, however, failed to raise any of his other claims

_____

[5]Kendrick claims in ground one of his petition that he received ineffective assistance of counsel from Carroll and Bailey. Kendrick claims in ground three of his petition that he received ineffective assistance of counsel from Meyeroff at the hearing on Kendrick's motion to withdraw his plea of no contest.

-15-

of ineffective assistance of counsel on direct appeal.[6]  The court of appeals held that "[t]he transcript of that hearing also demonstrates the lack of arguable merit to Kendrick's potential entrapment defense and necessarily renders frivolous any related ineffective assistance claims."  (Answer, Ex. B. at 3.)

Kendrick argues that his claim of ineffective assistance of counsel hinges on whether Carroll prevented him from going to trial by erroneously informing Kendrick that an entrapment defense was not available unless Kendrick was willing to admit to all the elements of the crime of intent to deliver cocaine.  Kendrick also asserts that Meyeroff rendered ineffective assistance of counsel for his failure to adequately argue Carroll's misunderstanding of the entrapment defense.  Kendrick alleges that the confidential informant gave Kendrick a brown paper bag and asked Kendrick to hold the bag until the next day.  (Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petitioner's Mem.") at 1.)  The confidential informant

_____

[6]Kendrick raised the issue that his counsel was ineffective for failing to file a motion demanding that the state disclose the identity of its informant on a motion for postconviction relief. The Wisconsin Court of Appeals determined this issue was procedurally defaulted pursuant to *State v. Escalano-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994).  (Answer, Ex. I at 5-6.)  In Kendrick's petition for habeas relief before the state courts, he alleged that trial counsel was ineffective for participating in a pretrial conference when Kendrick was not present.  The court of appeals noted that it was not in a position to address Kendrick's claims of ineffective assistance of counsel that were not properly preserved for appeal.  The court of appeals then determined that the claim was without merit as the circuit court noted that it did not routinely "produce defendants for final pretrials unless it would result in a disposition of the case."  (Answer, Ex. M at 3.)  From this Court's review of the record, other than the claims discussed in this footnote, Kendrick's additional claims of ineffective assistance of counsel have never been presented to a state court, and consequently, are procedurally defaulted.  *Breard v. Greene*, 523 U.S. 371, 376 (1998) (*per curiam*) ("assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas").

then made arrangements to pick up the bag and when Kendrick delivered the bag to the confidential informant, he was arrested. (*Id.* at 2.) Kendrick claims that Carroll abandoned the defense of entrapment because Kendrick would not admit that he knew what was in the bag. Kendrick argues "[t]he confidential informant gave a bag to Kendrick and Kendrick did not know what was in it, and then the confidential informant makes arrangements to pick up the bag and the bag contains drugs, that would be entrapment whether or not Kendrick knew what was in the bag." (*Id.*)

A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Matthew v. United States*, 485 U.S. 58, 63 (1988). Under Wisconsin law, proving entrapment is a two-step process. First, the defendant must prove by a preponderance of the evidence that he was induced by law enforcement officers to commit a crime. If that burden is met, the state then bears the burden of proving beyond a reasonable doubt that the defendant had a prior disposition to commit a crime. *State v. Hillesheim*, 172 Wis. 2d 1, 8-9, 492 N.W.2d 381, 384 (Ct. App. 1992), *cert denied*, 509 U.S. 929 (1993). "Once entrapment becomes an issue, all essential elements of the crime are taken as having been proved beyond a reasonable doubt." *State v. Saternus*, 127 Wis. 2d 460, 480, 381 N.W.2d 290, 299 (1986). Moreover, entrapment will only be established if the law enforcement officers used excessive incitement, urging, persuasion, or temptation and prior to the inducement, the defendant was

-17-

not already disposed to commit the crime. *Hillesheim*, 172 Wis. 2d at 9, 492 N.W.2d at 384.[7]

At the plea withdrawal hearing, Carroll testified that he determined that an entrapment defense would not work because the informant did not suggest there was any pressure exerted on Kendrick and that Kendrick voluntarily agreed to sell the drugs and told police that he did it upon his arrest. (Transcript, Ex. 9 at 8.) Carroll also testified that Kendrick gave a later statement where he denied that he had knowledge that there was cocaine in the bag after he had admitted it upon being arrested. (*Id.* at 9.)[8] Carroll testified that he advised Kendrick that in order to present an entrapment defense, Kendrick would have to admit that he knew it was cocaine, [i.e. admit to the offense], and Kendrick was not willing to do that. (*Id.* at 13.)

---

[7]"[T]he defense of entrapment is designed to exonerate a person who under ordinary circumstances is 'guilty.' This cannot or should not be a defense that is entertained lightly by courts. Thus, to even get the defense before the jury, it behooves a defendant to make a substantial showing of inducement by the government to have the defendant commit the crime. A defense which in essence asserts, 'I committed the crime and at the time I did so that was my intention, but you should let me off because the police violated public policy' is hardly one that is viewed with great approval. The defense of entrapment as viewed by the Wisconsin court is a disfavored one, because the accused is asking to be relieved of the consequences of his guilt." *Saturnus*, 127 Wis. 2d at 471, 381 N.W.2d at 294-95.

[8]At the hearing held before Judge Brennan, Carroll testified that initially there was a statement where Kendrick admitted his involvement. Kendrick, however, was not willing to give the name of the person that supplied the cocaine. Carroll testified that "then [Kendrick] developed this theory that the person that was working with the police, a Michael, actually was the one that brought it over the day before. And I remember meeting with the detective. And he told me that Michael had been working at UPS the day before when he said that he came over. And he verified that. So at that point I began to suspect that Mr. Kendrick might be lying about that." (Transcript, Ex. 11 at 28.)

-18-

An ineffective assistance of counsel claim is governed by a two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* is clearly established Federal law, as determined by the Supreme Court of the United States. *See Washington*, 219 F.3d at 627-28. Pursuant to *Strickland*, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second component, a petitioner "must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial who result is reliable." *Id.* at 687.

If the Court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *See Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). "Unless a defendant makes both showings, it cannot be said that the

-19-

conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. This standard applies equally to the assistance of counsel in entering a guilty plea; and to demonstrate prejudice, "the defendant must show that here is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockart*, 474 U.S. 52, 59 (1985). Where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *Id.*

The court of appeals rejected Kendrick's various ineffective assistance challenges. (Answer, Ex. B at 2). In order to overturn his presumptively valid state court conviction in federal court, Kendrick must prove the Wisconsin courts resolved his ineffective assistance challenges in a manner that is contrary to, or involves an unreasonable application of, the principles of *Strickland v. Washington*. *See Bell*, 535 U.S. at 693-94. Kendrick must prove the court of appeals' resolution of his *Strickland* challenge was both incorrect and unreasonable. *Id.* at 698-99. On federal habeas review, the state court's findings of fact and credibility determinations underlying its conclusion that counsel was not ineffective are presumed correct and Kendrick bears the burden of proving by clear and convincing evidence that they are clearly erroneous. 28 U.S.C. § 2254(e)(1); *Connor*, 375 F.3d at 649.

Kendrick cannot overcome the strong presumption that trial counsel made sound strategic decisions and performed in a reasonably competent manner. Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to

-20-

second-guess counsel's assistance after the sentence has been imposed. Kendrick was facing a potential sentence of thirty years, instead, by effectively pleading guilty, he received a sentence of twenty years. This Court's review of the record reveals that Carroll was concerned with Kendrick's inconsistent statements. Moreover, Kendrick was unwilling to go forward with the requirements of an entrapment defense, namely that all essential elements of the crime are taken has having been proved beyond a reasonable doubt, as required by Wisconsin law. (Transcript, Ex. 9 at 9-13.) Kendrick appears to be arguing that he was set up by the police informant and did not know what was in the brown paper bag when he returned it back to the informant. Carroll further determined that this theory would be unsuccessful as well, given Kendrick's inculpatory statement to police officers upon his arrest and the verified fact that the informant was at his place of employment the day he allegedly brought the brown paper bag to Kendrick. (Transcript, Ex. 11 at 28.)

Carroll's advice was well within the wide range of reasonable professional assistance and does not constitute deficient performance. Similarly, Meyeroff, did not render ineffective assistance of counsel for his alleged failure to argue that Carroll misunderstood the affirmative defense of entrapment. Carroll did not misunderstand the defense of entrapment and Meyeroff's performance was not deficient. Kendrick does not demonstrate that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different – Kendrick has not demonstrated that the entrapment defense would have been successful. Thus, Kendrick fails to establish that the Wisconsin courts acted contrary to, or

-21-

unreasonably applied, the principles of *Strickland v. Washington*, when Kendrick's claim of ineffective assistance of counsel was rejected.

As for Kendrick's other claims of ineffective assistance of counsel, they are barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 169, 517 N.W.2d 157 (1994) because Kendrick should have raised these claims at the time the no merit report was filed. (Answer, Ex. E.) "If the state court declined to reach the merits of the petitioner's claim because of a procedural default, that default must constitute an independent and adequate state-law ground in order to be a bar to federal habeas relief." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). Whether the ground is independent depends on state law and whether it is adequate depends on federal law. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). A procedural default constitutes an independent state law ground if "the last state court to consider the question actually relied on procedural default as the basis for its decision." *Braun*, 227 F.3d at 912 (citing *Willis v. Aiken*, 8 F.3d 556, 561 [7th Cir. 1993]). The state court must have "'clearly and expressly' relied on the procedural default as the basis of its ruling." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 [1989]).

"To be an adequate ground of decision, the state's procedural rule must be both firmly established and regularly followed." *Id.* (quotations omitted). It must be applied in a "consistent and principled way; it cannot be employed infrequently, unexpectedly, or freakishly." *Id.* (quotations omitted). Moreover, "the state rule of practice must have been in place, and enforced, 'by the time as of which it is to be applied.'" *Liegakos*, 106 F.3d at 1385 (quoting *Ford v. Georgia*, 498 U.S. 411, 424 [1991]). The disposition of the last state

-22-

court to issue an opinion determines whether the state has invoked a ground of forfeiture. *Id.* at 1385. The last state court to consider the issue, the Wisconsin Court of Appeals, relied on procedural default as the basis of its decision not to address Kendrick's additional arguments regarding his claims of receiving ineffective assistance of counsel. (Answer, Ex. I at 5.)

Nevertheless, federal review of the petitioner's claim may still be available "if the petitioner can show cause and prejudice for [his] failure to exhaust [his] claims, or if a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice." *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999). A "fundamental miscarriage of justice" is shown where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . .." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 [1986]). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Id.* at 917.

Kendrick has not provided sufficient explanation for not raising the additional claims of ineffective assistance of counsel on direct appeal. Additionally, Kendrick has not shown that he was wrongly convicted. *See Howard*, 185 F.3d at 726. Kendrick has failed "to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez*, 193 F.3d at 917. Therefore, this Court is barred from reviewing Kendrick's additional claims regarding ineffective assistance of counsel.

Kendrick fourth ground for habeas relief is that the trial court erroneously denied his motion to withdraw his plea and improperly instructed his trial counsel not to produce Kendrick at the pretrial conference. As previously discussed in this Decision and Order, Kendrick's claims regarding his plea withdrawal motion are without merit. As for Kendrick's other claim, the circuit court indicated that it did not routinely "produce defendants for final pretrials unless it would result in a disposition of the case." (Answer, Ex. M. at 3.) At noted by the court of appeals, "Kendrick's suspicions that there is something untoward about counsel participating in a scheduling conference without the defendant's presence is unfounded." (Answer, Ex. M at 3.)

Kendrick also argues that the "mandatory procedures of an arraignment" were not fulfilled. (Petitioner's Mem. at 10.) Kendrick failed to raise this issue before any state court, and consequently, it is procedurally defaulted. *Breard*, 523 U.S. at 376 ("assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas"). Kendrick fails to show cause and prejudice for his failure to exhaust his claims, or that a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice. *Howard*, 185 F.3d at 726.[9]

Kendrick's fifth and final challenge to his conviction is that he received ineffective assistance from appellate counsel because his appellate counsel failed to conduct a conscientious examination of the record and "[t]he no-merit report does not refer to anything

---

[9]Kendrick's issue is without merit. The district attorney apprised the circuit court that in this case, an amended information was filed, however, an arraignment was never held on it, so Kendrick entered a plea to the charges in the original Information. (Transcript, Ex. 6 at 2.)

-24-

in the record that might arguably support the appeal." (Petition at 8.) The Respondent argues that the state appellate court's rejection of Kendrick's claim was not contrary to nor did it involve an unreasonable application of controlling United State Supreme Court authority. The court of appeals rejected Kendrick's assertion that appellate counsel did not comply with *Anders* because he allegedly failed to conscientiously examine the record and instead deceptively mischaracterized selective issues to support his conclusion that there were no arguably meritorious issues. (Answer, Ex. B at 3.)

Kendrick has not shown that the Wisconsin Court of Appeals failed to properly follow the no-merit procedures required by *Anders v. California*, as codified in Wis. Stat. § 809.32. *See McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429 (1988). In order to prevail, Kendrick must prove that the Wisconsin Court of Appeals acted contrary to, or unreasonably applied, the principles of *Anders v. California*. 28 U.S.C. § 2254(d)(1).

The United States Supreme Court in *Anders* set forth the procedures appointed appellate counsel must follow after counsel's review of the case leads to the conclusion that an appeal would be wholly frivolous. 386 U.S. at 744. *See also Penson v. Ohio*, 488 U.S. 75, 80 (1988). Appointed counsel must request permission to withdraw but that request must be accompanied by a brief discussing any issue that might be arguably meritorious. Counsel must provide a copy of that brief to the indigent defendant who then may file a response thereto raising any issues he believes to be meritorious. The Wisconsin Court of Appeals must then examine those filings, as well as the entire record, to determine whether the appeal is wholly frivolous. If it agrees with counsel that the appeal is wholly frivolous, the court of

-25-

appeals may allow counsel to withdraw and dismiss the appeal, or proceed to a decision on the merits.  It if finds that any legal arguments presented are arguably meritorious, it must provide the indigent with the assistance of counsel to present the issue on appeal.  *Anders*, 386 U.S. at 744.  The process is codified in Wis. Stat. § 809.32.

The Wisconsin Court of Appeals adhered to the requirements of *Anders*.  The thorough No Merit Report filed by appointed appellate counsel complies with *Anders*.  Kendrick was then permitted to, and did, file a *pro se* response raising additional issues he believed to be arguably meritorious.  The Wisconsin Court of Appeals carefully reviewed counsel's report, and Kendrick's *pro se* response, before agreeing with counsel that there were no arguably meritorious issues on appeal.  The court went on to independently review the record on its own, as required by *Anders*, to determined whether there were any other arguably meritorious grounds for challenging the conviction.  The court of appeals found none.

Kendrick makes no showing that anything appellate appointed counsel did violated *Anders*.  Nor does he show that the Wisconsin Court of Appeals' review of his case violated *Anders*.  Kendrick makes no showing that there was anything wrong with the no-merit review process and he has failed to meet his burden of proving that the Wisconsin court of Appeals acted contrary to, or unreasonably applied, *Anders v. California* when it upheld his conviction

In conclusion, the decision of the state court was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme

Court of the United States.  Further, the state court's adjudication of Kendrick's claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented.  Therefore, Kendrick's petition for writ of habeas corpus is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Kendrick's Amended Petition for Writ of Habeas Corpus (Docket No. 32) is **DENIED**.

**IF IS FURTHER ORDERED** that Kendrick's Motion to Supplement Missing Documents (Docket No. 47) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of October, 2008.

**SO ORDERED,**


**s/ Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**